Good morning. May it please the Court, Alex Harris on behalf of the appellant Q Excelsior Italia SRL, whom I'll refer to as Excelsior, and with the Court's permission, I'd like to reserve three minutes for rebuttal. That's fine. Thank you. Your Honors, under normal pleading standards, Excelsior stated a claim for coverage under the policy at issue in this case, and the District Court made two mistakes in concluding otherwise. First, it failed to recognize that Excelsior pled physical loss or damage to the Westin Rome. There's no categorical rule against showing physical loss from COVID, and indeed, Sandy Point contemplates that COVID can lead to a loss of use that's so pervasive that it renders complete dispossession of property. That's what it takes to trigger coverage under this policy, and that's exactly what we've in Rome, Italy, was rendered uninhabitable when SARS-CoV-2 entered the hotel, circulated through the air, affixed itself to surfaces where it remained infectious for days and weeks, and it was impossible to clean through normal means. Those are allegations of dispossession because those are allegations of making the entire property unsafe for any purpose and showing that the property was unfit for normal human occupancy. Under Sandy Point, that's enough to show physical loss. Second, the District Court erred in denying coverage under the policy's microorganism exclusion. As we explained, that term is ambiguous, the term microorganism, as to whether it encompasses a virus like SARS-CoV-2 or COVID in the first place, and under Illinois law, ambiguous terms are always construed in favor of coverage and in favor of the policyholder. The District Court broke from that principle when it denied coverage. We also respectfully urge that or submit that Crescent Plaza Hotel Owner v. Zurich American Insurance Company, this Court's previous decision, departed from the same principle when it construed the same provision and reached the same result, finding no ambiguity with the term microorganism on that point. We therefore respectfully urge that the Court reconsider and overrule Crescent Plaza to the extent that it supports affirmance below. This case should be reversed, but if the panel has any doubts, we urge that it certify both of the questions that we presented to the Illinois State Supreme Court. Both questions raise important recurring issues in insurance law, which is a core state concern, and- Mr. Harris, you filed this case in state and federal court, correct? We did. Yes, Your Honor. It's pretty unusual for a plaintiff who picks a federal forum on a question of state law to then ask us to certify. That's correct, Your Honor, but when we filed this case, there wasn't the inconsistency that we've pointed to in our brief on the questions that we presented. One, which is the first question on complete uninhabitability, or uninhabitability and complete dispossession, and the second is the microorganism exclusion and whether that's ambiguous. So, Crescent Plaza came out after you filed your complaint? It did, Your Honor. After we filed the complaint. Before this case was dismissed, though. Can you point us to any Illinois COVID coverage cases, appellate cases that support your position? That support our position on the first point, on the microorganism exclusion? Either one. Excuse me, on uninhabitability? Either one. Either one. Well, Your Honor, I think that's the point that we're trying to make is that our case is the first that's really presented allegations. Well, there are more than a dozen Illinois appellate decisions on COVID coverage that have all come out in favor of no coverage. They're not identical provisions, but you know this probably far better than I do, and the Illinois court has had plenty of opportunities to take up this issue if it were unhappy with what the appellate courts were doing. Well, respectfully, Your Honor, we submit that it hasn't because there hasn't been a case that's actually presented the kind of allegations that we have, and I think that's because of the particular facts of our laws. This is about wrongly... You've just gone from this question arising time after time to saying that your case is unique. Which is it? Well, I think that the first point is that complete dispossession does recur. It recurs in rare cases, but it does recur in cases, for instance, like those cited in Sandy Point, and like in our case, where a noxious substance enters a property and makes it uninhabitable. It's not that it doesn't recur, or excuse me, it's not that it recurs every day, but it does happen, and when it does happen, there should be a clear standard. The second point is on ambiguity. That's a question that does recur very often. This is an issue that is potentially live in every coverage dispute involving contract interpretation of an insurance policy, and introducing confusion into the Illinois State Court standards for what constitutes ambiguity would really threaten to undermine certainty with policyholders, both in litigating these cases and in entering coverage policies in the first place. So I think these are important issues that do recur often, even if they don't recur in the specific context that we've alleged in our complaint. And again, I think I want to drive that home. This case is, the question hasn't been presented, the first question hasn't been presented to the Illinois State Supreme Court because it hasn't actually been alleged, because nobody, as far as we can tell, can allege the kind of loss that we have. So Mr. Harris, in your brief, you keep talking about how the COVID virus made the facilities uninhabitable for the intended purpose, and you keep talking about intended purpose, intended purpose. And I guess my question is, during the time in question, was there anyone on site there? Was it being used for any purpose? In other words, were there maintenance crews there, was there equipment there, were things being stored there, were the tables for the ballrooms being stored there? I mean, what was going on at the property, or was it just completely empty, like no one could go in, there was police tape basically around it, and, you know, what was going on there? Well, basically, first, to answer your second question first, there were periods where no one was inside. We pointed out that there were times, long periods, where guests were not staying in the hotel at all. Well, aside from guests, were there other people on site? Sure, other people. Yeah, we have alleged that some staff eventually was able to return to the hotel for the purpose of remediating and making safe. But I think that that's something that is true also in the other cases that are cited favorably in Sandy Point as examples of complete dispossession, and that's the Gregory Packaging case and the Matzner case about ammonia and about carbon monoxide, respectively. Both of those cases involved buildings that were rendered uninhabitable, but in both cases, maintenance workers, staff workers, were able to go inside during those periods of uninhabitability to remediate and make safe for workers and tenants, respectively, to eventually return to those buildings. And that's the same situation here. It's no different functionally. And I think that that doesn't change the fact that it was uninhabitable during that period. I see that I'm running into time for rebuttal. With the Court's permission, reserve that. That's fine. Thank you. Thank you. Ms. Cole-Ross? Good morning, and may it please the Court. Counsel, there's nothing unique about the hotel suffering economic losses in this case due to the COVID-19 pandemic. In Crescent Plaza, the Ritz-Carlton, Dallas, likewise, the factual allegations were that although the hotel remained open for business, it had far fewer guests and could not use all of its facilities, only certain areas. And the same policy was at issue, the same Zurich policy was at issue, and this Court held, with Judge Hamilton authoring the decision, that there was no direct physical loss or So we don't have a unique circumstance here. At all times, as alleged in the operative amended complaint, and I would like to point out that the amended complaint was filed after Crescent Plaza and Sandy Point were decided. So the original complaint was filed and a series of, a motion to dismiss and a series of briefs were filed. And Judge Feinerman denied that initial motion to dismiss as moot, denied without prejudice, allowed Excelsior to file an amended complaint. So if they could plead around Crescent Plaza and Sandy Point and that initial group of decisions, they were afforded the opportunity to do so. They could not. The operative first amended complaint acknowledges that the Excelsior was not required to close. It did not close. It continued to operate with enhanced cleaning procedures and personal protective equipment for staff and guests. That's in paragraphs 9 and paragraph 68 of the amended complaint. The hotel employed extra security staff to ensure that only staff and guests with green passes entered the premises. That's in paragraph 68 of the amended complaint. So at no time did the hotel meet the legal standard for uninhabitability, which is set forth in Sandy Point, which says physical entry impossible barring all use by all persons. We never had that here. As Judge Lee mentioned, the hotel was always storing equipment. The hotel was always open for business regardless if any travelers choose to book rooms there. There was hotel staff, employees, and security using the premises at all times. So we failed to meet, plaintiff has failed to meet, the legal standard for uninhabitability. And merely saying unsafe or uninhabitable in the amended complaint is not sufficient where you have factual allegations that contradict that conclusory label. And so this case is no different. If we look at Illinois law, we have the Sweetberry Cafe case. And the court held that there was no physical dispossession in that case, a restaurant where it lost use of the facility for in-person dining. But it was allowed to prepare food for carryout. And the court said where the facility can still be used for some purposes, you don't have physical dispossession. And it, like Sandy Point, it contrasted that situation to the noxious fumes, the gas infiltration cases where physical entry is impossible, all use by all persons is barred. And I would like to point out that in addition to Crescent Plaza, we have in addition to that was a hotel. They were still allowed to remain open for lodging, but a lot of their facilities weren't used. Their occupancy was lowered. Materially indistinguishable facts from the present case, no direct physical loss or damage. We've talked about the Ritz-Carlton, Dallas, same situation in Crescent Plaza. We've got the Conrad Hotel in Circle Block Partners. And I will draw the court's attention to Judge Hamilton's words in authoring the opinion in that case, quote, because of the Conrad's status as an essential business, for certain purposes, it was permitted to remain open to provide lodging and delivery or carry out food services. In other words, the hotel was not rendered completely uninhabitable by the pandemic, period, end quote. The Conrad case involved Indiana law. It did. Ms. Colross, could I ask you one thing I was troubled by? Certainly. Judge Feinerman noted in his entry granting the motion to dismiss, allegations in the complaint that Zurich had not even responded to plaintiff's claims for coverage. I'm not sure that that is accurate. I do not know the exact timing. I'm not sure if it's of record. But they did, there was a claim for cancellation of bookings. That claim survived the motion to dismiss. It was ultimately withdrawn because coverage, the sublimit had been exhausted by other claims. So I know at some point there was an acknowledgement that there would be coverage afforded under cancellation of bookings. At some point is not the standard under insurance law, however. It isn't. Unfortunately, I do not know what the exact timing is. But I will point out that although Circle Block involved Indiana law, there is discussion that the principles of Indiana law are similar to Illinois law. And so we feel that your words in that case apply equally here, where you have a business that is open for business, it is being used for some purposes, although not to its maximum capacity. Every Seventh Circuit case and every Illinois case that has looked at that situation has said that there is no direct physical loss or damage shown, not in those situations. And so that defeats the claim for coverage, because if you don't have physical loss or damage to start, you cannot reach coverage, you cannot reach any exclusions. Just because the question was asked about certification, the Illinois Supreme Court has already, in three separate cases, been asked to grant leave to review these issues and has denied review. One of those was Sweetberry. So if the court had any, the Illinois Supreme Court, had any concern with how Illinois law was developing in this regard, it's had the chance to look at it and declined to do so. Sweetberry did address the dispossession, complete physical dispossession, in the same manner as Sandy Point. Again, the Illinois Supreme Court denied review. And if there are still cases percolating up through the appellate courts in Illinois, if the Illinois Supreme Court would like to weigh in on any of these issues in the future, it certainly has the ability to do so, but certification is not warranted here. If there are no further questions, I don't need the rest of my time. Thank you. We ask that the matter be affirmed. Thank you. Mr. Harris. Thank you, Your Honors. I'd like to start just with a point that my friend made at the very end of her argument about Sweetberry and certification. Sweetberry did not raise the question that we presented in our questions for certification. And that question is whether there's a categorical bar on showing complete dispossession through COVID. Sweetberry, the court found that the plaintiff had not sufficiently alleged complete dispossession. And indeed, there's evidence from a reading of the complaint, from a reading of that case, it seemed as though they didn't even allege facts that would have met any standard for the state courts. The same is true in the other cases that are cited or that Zurich raised. Crescent Plaza, Bend Hotel, Circle Block, and again, Sweetberry, all of those cases involved a loss of intended use or a partial loss of use. And that's not the loss that we've alleged here. We've alleged a total loss of all use. We've alleged the property was unsafe for any purpose and that it was unfit for people to be inside. And I think that that's the difference here. That's how our case is different from all of those other cases. And that's why we're not actually asking the court to expand the standard for complete dispossession. We're saying that we're the rare case that does meet that standard. And again, that's because this is about this particular loss in this particular place, this particular time in the history of the pandemic. This is about the West in Rome in March of 2020. It's the most prominent hotel, one of the most prominent public spaces in Rome, in the biggest city in the country that was hit the very hardest by the very first wave of COVID outside of China in March 2020. Thousands were dying a week in Italy. Hospitals were overrun. There wouldn't be a vaccine that was safely and widely available for over a year. This was a very dangerous time to be in Rome. And to be in a public place like the West in Rome, to be in a place where people were active, were circulating, meant exposing yourself to a potentially lethal threat. That's the kind of risk that was at play when one entered the hotel, as we've alleged. And that's the kind of loss, that's the kind of source of the loss that we suffered. This is not an everyday occurrence. And that's why this is, again, this is the rare case that meets the complete dispossession standard, that high bar that this court has established in Sandy Point. We urge the court to reverse the decision below. And if any doubts remain, we request that the court certify the questions to the Illinois State Supreme Court. I welcome any further questions. Otherwise, we thank the court for its time. Thank you very much. Our thanks to both counsel. The case is taken under advisement.